IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA    )
                               )
      v.                      )
                               )    **Civil No. 3:20-cv-716**
APPROXIMATELY $23,131 IN U.S.   )
CURRENCY SEIZED FROM ALEX    )
WHEELER ON AUGUST 23, 2020 AT  )
THE CHARLOTTE-DOUGLAS      )
INTERNATIONAL AIRPORT       )

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

NOW COMES Plaintiff the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and alleges as follows:

### INTRODUCTION

1.     This is a civil action *in rem* against $23,131.00 in United States currency seized from Alex Wheeler on August 23, 2020 at the Charlotte-Douglas International Airport (the "Currency").

2.     After law enforcement noticed the strong odor of marijuana from a checked suitcase—which belonged to Wheeler—a drug detection dog positively alerted to the odor of narcotics on the suitcase when it was pulled and placed in a lineup with others. A consensual search of the suitcase and Wheeler's carry-on bag revealed $23,131 in bundled cash hidden in clothes and shoes, and a drug detection dog later positively alerted to the Currency in a blind screen. Wheeler, who originally claimed he was traveling with $8,000 in cash to shop on Rodeo Drive in Los Angeles

(which he had purportedly withdrawn over time from his bank account), gave law enforcement purposefully deceitful—and easily disproven—answers regarding his employment status, the source of the currency, the amount of the currency, and his criminal history (which is extensive and includes, among other things, felony cocaine distribution and trafficking convictions).

3.     Rather than demonstrating any legitimate source of the Currency, records obtained by law enforcement instead demonstrate Wheeler was fired from his job prior to the date of the seizure, made much less than he claimed when he was employed—in fact, earning roughly the amount *in a year* that he was carrying *in cash* that day, and the sole bank statement (May 2020) provided by Wheeler himself showed an ending balance for that month of around *negative* $500 and numerous overdraft fees already incurred by Wheeler in the year to date.

4.     Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

5.     Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

7.    Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

8.    The Currency has been seized and is now within the Western District of North Carolina.

9.    Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Stephen G. Brown, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

10.    On August 23, 2020, Alex Wheeler was traveling from Charlotte, North Carolina to Los Angeles, California on an American Airline's flight. Wheeler had checked one suitcase.

11.    While in the Charlotte airport baggage room, TFO Brown noticed a suitcase there that had a strong odor of marijuana emitting from the zipper seam.[1] Upon inspection, the suitcase had a luggage tag with Wheeler's name.

---

[1] The baggage room is the area where checked baggage is sorted for flights prior to be sent out onto the ramp and loaded onto aircraft.

12.     Wheeler's suitcase was pulled and placed into a lineup with four other suitcases.

13.     TFO Brown contacted TFO Cerdan, who brought his drug detection canine Cali to the baggage room.

14.     Cali is a properly trained and certified narcotics detection canine trained to detect narcotics odors including marijuana, cocaine, methamphetamine, ecstasy, and heroin.

15.     TFO Cerdan presented the suitcase lineup to K9 Cali, who only alerted to the odor of narcotics on/around/from Wheeler's suitcase.

16.     TFO Brown and TFO Cerdan then detained Wheeler's suitcase and proceeded the gate for Wheeler's flight to locate Wheeler. TFO Brown requested the gate attendant page Wheeler, after which Wheeler arrived at the gate and identified himself.

17.     TFO Brown asked Wheeler if the suitcase was his, if he packed the suitcase himself, and if the contents of the suitcase belong to him. Wheeler answered "yes."

18.     TFO Brown asked to speak with Wheeler privately, Wheeler agreed, and the law enforcement officers and Wheeler moved to an unoccupied gate nearby.

19.     Wheeler granted consent to search the suitcase, and gave law enforcement the combination to its lock.

20.     TFO Cerdan conducted the search of the suitcase and located large amounts of U.S. currency wrapped in rubber bands hidden in clothing and shoes:



21.    TFO Brown further requested consent to search Wheeler's carry-on backpack. This search revealed more currency underneath a jacket.

22.    Wheeler then granted consent to search the jacket as well, which revealed more currency.

23.    The Currency seized totaled $23,131.00.

24.    The Currency was placed into a blind lineup that was presented by TFO Cerdan to his certified narcotics detection K9 Cali. Cali only alerted to the odor of narcotics on/around/from the hide used to conceal the Currency.

25.    The Currency was transported to Loomis, where it was counted and deposited into an account established to hold seized funds.

26.    Law enforcement spoke with Wheeler throughout their encounter. On a variety of topics (identified below), Wheeler gave conflicting, false and/or purposefully deceitful statements.

*The amount of the Currency*

27.    Prior to the search of the suitcase, TFO Brown asked Wheeler if he had in his possession any large amounts of currency. Wheeler stated he was only traveling with $8,000.

28.    After more currency was located under his jacket, Wheeler stated that currency was "$200-300," and after more currency was found inside his jacket, Wheeler stated that currency was "$2,000."

29.    After the search revealed all three sums of currency, FTO Brown asked Wheeler how much cash he had in total with him that day. Wheeler replied "$9,500."

30.    At the conclusion of the interview, after TFO Brown had examined the currency found hidden in Wheeler's suitcase and backpack, he informed Wheeler that the Currency amounted to more than what Wheeler originally claimed it to be. Wheeler then stated the Currency was $23,000 to $24,000.

31.    The Currency ultimately totaled $23,131.00—demonstrating that Wheeler's previous statements to law enforcement regarding the Currency's amount were purposefully deceptive.

*Wheeler's employment history and the source of the Currency*

32.    When TFO Brown asked Wheeler about the source of the Currency, he stated that he worked at Kraft/Heinz and the Currency came from his bank "All South Federal Credit Union." Wheeler stated he was paid every week and made between $1,600 and $1,700 per week—which would result in at least $83,200 in yearly income.

33. Wheeler claimed he had withdrawn the money from his bank account in multiple withdrawals over an extended period of time and he intended to use the money to shop on Rodeo Drive in Los Angeles.

34. Documents obtained from the South Carolina Department of Employment and Workforce (SCDEW) indicate that Wheeler was lying about his employment status and income.

35. For example, SCDEW produced an application for employment submitted by Wheeler dated July 19, 2020, in which Wheeler represented that he had been fired from Kraft/Heinz due to attendance issues.

36. SCDEW records further demonstrate that Wheeler made significantly less at Kraft/Heinz (when he did actually work there) than he represented to law enforcement, with yearly incomes of: (a) $23,982.75 in 2017, (b) $22,937.91 in 2018, and (c) $12,253.38 in the first half of 2019.

37. Thus, the amount of cash Wheeler was traveling with the day of the seizure equaled roughly his total yearly income in 2017 or 2018 when he was employed at Kraft/Heinz.

38. The sole account statement (May 2020) from All South Federal Credit Union that Wheeler submitted with his administrative claim only further demonstrates the lack of a legitimate source for the Currency: as of May 31, 2020 Wheeler had incurred a total of $270 in overdraft fees for the year, and had (1) for his savings account, a beginning balance of $8.00 and ending balance of $7.25, and (2) for

his checking account, a beginning balance of **negative** $444.25 and ending balance of **negative** $502.58 (with roughly $2,000 of deposits and withdrawals in between).

### Wheeler's criminal history

39. TFO Brown also asked Wheeler if he had ever been arrested or charged with any crime.

40. Wheeler hesitantly responded that he had a weapons charge, a misdemeanor marijuana charge, and a later felony marijuana charge in 2009.

41. Conversely, Wheeler's criminal history is extensive, including—in addition to numerous charges and arrests on both violent and drug trafficking crimes—convictions for second degree burglary (1999), misdemeanor public disorderly conduct (2003), giving false information (2003), unlawful carrying of a weapon (2003), public disorderly conduct (2006), felony manufacturing/distributing cocaine base (2010), and felony trafficking cocaine – 28g or more, but less than 100g (2010).

42. Wheeler was sentenced to seven years imprisonment for his 2010 cocaine-trafficking related charges, making the only reasonable inference that can be drawn from Wheeler's statement to law enforcement—that he only had marijuana convictions—is that at the time, it was purposefully deceitful.

### Wheeler's travel history

43. For the trip at issue, Wheeler told the law enforcement officers that he had booked his airline ticket to Los Angeles the night before to see his brother.

44.     California is a known drug-source state, and Wheeler made multiple

trips between California and South Carolina over the past year or so:

| September 3, 2019 | Columbia, SC to Los Angeles, CA |
| September 6, 2019 | Los Angeles, CA to Columbia, SC |
| September 24, 2019 | Columbia, SC to Los Angeles, CA |
| September 27, 2019 | Los Angeles, CA to Columbia, SC |
| November 10, 2019 | Los Angeles, CA to Charlotte, NC |
| July 31, 2020 | Greenville/Spartanburg, SC to Los Angeles, CA |
| August 7, 2020 | Los Angeles, CA to Greenville/Spartanburg, SC |
| August 23, 2020 | Charlotte, NC to Los Angeles, CA |

45.     On these trips, Wheeler traveled both alone and with others who

traveled with tickets purchased by Wheeler.

## FIRST CLAIM FOR RELIEF – THE $23,131 IN CURRENCY
### (21 U.S.C. § 881(a)(6))

46.     The United States incorporates by reference the allegations set forth in

Paragraphs 1 to 45 above as if fully set forth herein.

47.     The $23,131 in Currency is subject to forfeiture pursuant to 21 U.S.C. §

881(a)(6) because it constitutes money furnished or intended to be furnished by any

person in exchange for a controlled substance or listed chemical in violation of 21

U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money

used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

48.     Upon information and belief, the following persons may claim an

interest in the Currency seized on August 23, 2020:

Alex Wheeler
415 Siloam Church Road
Greenwood, SC 29646

## CONCLUSION AND PRAYER FOR RELIEF

49.     By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and if forfeitable to the United States of America.

WHEREFORE, the United States of America respectfully prays the Court that:

(1)     a warrant for the arrest of the Defendant Property be issued;

(2)     due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3)     judgment be entered declaring the Defendant Property to be condemned and forfeited to the United States of America for disposition according to law; and

(4) the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Defendant Property as required by 28 U.S.C. § 1921.

This 21st day of December, 2020.

Respectfully submitted,

R. ANDREW MURRAY
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
NC Bar No. 53217
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

## **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the ____ day of December, 2020.

Task Force Officer Stephen G. Brown
Department of Homeland Security,
Homeland Security Investigations